# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 18-0020V**
**Filed: July 2, 2019**
UNPUBLISHED

INGRID M. LARISH,

Petitioner,
v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Special Processing Unit (SPU); Finding of Fact; Onset; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA)

*Matthew F. Belanger, Faraci Lange, LLP, Rochester, NY, for petitioner.*
*Dhairya Divyakant Jani, U.S. Department of Justice, Washington, DC, for respondent.*

## FACT RULING AND SCHEDULING ORDER – SPECIAL PROCESSING UNIT[1]

**Dorsey**, Chief Special Master:

On January 3, 2018, Ingrid Larish ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on October 31, 2015. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons discussed below, the undersigned finds that the onset of petitioner's left shoulder pain occurred within 48 hours of the October 31, 2015 flu vaccination.

[1] The undersigned intends to post this ruling on the United States Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this published ruling contains a reasoned explanation for the action in this case, undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Procedural History

On January 3, 2018, Ms. Larish filed her petition for compensation under the Vaccine Act. ECF No. 1. Five days later, petitioner filed an affidavit and supporting medical records marked as Exhibits 1-7 and a Statement of Completion. ECF Nos. 6-8

On February 21, 2018, the initial status conference was held. ECF No. 10. Respondent was ordered to file a status report indicating how he intended to proceed in this case. *Id*.

On October 5, 2018, respondent filed a status report indicating that he had completed a review of the records and wished to explore the possibility of settlement in this case. ECF No. 23. Respondent requested that his Rule 4(c) Report deadline be suspended and that petitioner forward him a settlement demand. *Id*.

Thereafter, petitioner was ordered to file a status report updating the Court on the parties' settlement discussions. ECF No. 24. Petitioner filed status reports on October 31, 2018, December 3, 2018, and January 3, 2019 regarding the parties' settlement discussions. ECF Nos. 25, 27, 29.

On February 5, 2019, petitioner filed a status report indicating that petitioner's counsel had communicated with respondent's counsel regarding settlement on February 1, 2019. ECF No. 31. During this communication, petitioner's counsel noted that "it became apparent that settlement discussions [were] unlikely to be successful or progress until [the parties] [got] a ruling from the Court on [the] manifestation of Petitioner's left shoulder pain after vaccination." *Id*. Petitioner's counsel indicated that the parties requested a hearing on the manifestation of symptoms and entitlement to compensation in this case. *Id*.

A telephonic status conference was held on March 11, 2019 with the staff attorney managing this case. ECF No. 34. During the call, petitioner's counsel proposed having the undersigned decide the issue of onset on the record. *Id*. Respondent's counsel confirmed that respondent had no objection to deciding the issue of onset on the record. *Id*. On March 11, 2019, a scheduling order was issued noting that the undersigned was amenable to proceeding with a briefing schedule and setting the deadlines for the parties. *Id*.

Thereafter, petitioner filed an affidavit from George W. Larish (her husband) on March 20, 2019 (ECF No. 35) and a supplemental affidavit on April 4, 2019 (ECF No. 39). Petitioner filed a motion for a ruling on the record on April 5, 2019. ECF No. 41. Respondent filed a response to petitioner's motion on May 28, 2019. ECF No. 42. On June 6, 2019, petitioner filed a reply brief in support of her motion. ECF No. 43.

The undersigned now issues this fact ruling.

## II. Factual History

### a. Petitioner's Medical Records

On October 31, 2015, petitioner was administered a flu vaccine intramuscularly in her left upper arm at Rite Aid. Petitioner's Exhibit ("Pet. Ex.") 2 at 1. The available medical evidence of record does not reflect a history of left shoulder impairment.

On January 4, 2016, petitioner presented to Oakfield Family Medical Care, PLLC, to review lab results as well as a prior ultrasound of her abdomen. Pet. Ex. 3 at 218. At that appointment, petitioner reported that she had been administered a flu shot in her left arm and was experiencing "some discomfort." *Id*.

On April 12, 2016, petitioner returned to Oakfield Family Medical Care, PLLC, for treatment of anxiety and depression. *Id*. at 65. Petitioner again reported that she was experiencing "some discomfort" at the site of her previous flu vaccination. *Id*.

On May 11, 2016, petitioner underwent an initial evaluation with Debra A. Brown, ANP-BC. Pet. Ex. 4 at 6. The "musculoskeletal" portion of the physical examination section notes "left shoulder pain."[3] *Id*. at 7. Petitioner was provided a referral for an orthopedic evaluation and x-ray imaging of her left shoulder. *Id*.

On June 21, 2016, petitioner underwent an x-ray of her left shoulder, which revealed no significant degenerative changes and no evidence of fracture or dislocation. *Id*. at 30.

On June 22, 2016, petitioner presented to Orthopedic Surgery, P.C., for a consultation regarding her left shoulder pain. Pet. Ex. 5 at 5. Petitioner indicated that she had been administered a flu shot in October 2015 and had experienced pain and discomfort for a few weeks that had persisted.[4] *Id*. She denied any previous injury to the shoulder. *Id*. Petitioner reported current weakness and limitations regarding her range of motion. *Id*. On examination, petitioner presented with 120 degrees of forward flexion with pain, 90 degrees of abduction with pain, no evidence of impingement, and "fair" strength. *Id*. Petitioner was administered an epidural steroid injection and was subsequently observed to have improved pain and range of motion. *Id*. The orthopedist assessed petitioner with bursitis of the left shoulder and indicated that he would treat petitioner on an as-needed basis.[5] *Id*.

On August 12, 2016, petitioner underwent a neurological evaluation for complaints of visual symptoms, headaches, and history of epilepsy. Pet. Ex. 6 at 7.

---

[3] It is unclear whether a physical examination of petitioner's left shoulder was completed during this medical appointment. Pet. Ex. 4 at 6-7.

[4] On June 22, 2016, petitioner also completed a "Medical History Questionnaire" in which she reported that she had experienced left arm symptoms for seven months. Pet. Ex. 5 at 2. Petitioner listed her "Date of Injury" as October 2015. *Id*.

[5] In addition to diagnosing petitioner with bursitis, the orthopedist commented that the needle from her previous flu vaccination had potentially penetrated the deltoid muscle and been placed in the subacromial space rather than the deltoid muscle. Pet. Ex. 5 at 5.

Prior to the evaluation, petitioner completed a patient questionnaire in which she noted that she had suffered a "Sirva inj[ury]." *Id*. at 4.

On August 17, 2016, petitioner returned to Orthopedic Surgery, P.C., for a follow-up appointment regarding her left shoulder condition. Pet. Ex. 5 at 7. At that time, petitioner reported that the previous injection to her left shoulder had been effective for two-to-three weeks; however, she indicated that she had subsequently experienced increased symptoms. *Id*. Petitioner was administered an epidural steroid injection and was again observed to have improved post-injection shoulder range of motion. *Id*. Petitioner was advised that she would need an MRI of her left shoulder if her symptoms returned. *Id*.

On August 29, 2016, petitioner underwent an MRI of her left shoulder, which revealed supraspinatus and infraspinatus tendinosis with multifocal shallow and moderate depth partial thickness articular surface tearing; a full-thickness tear of the anterior supraspinatus tendon with mild retraction; insertional subscapularis tendinosis with partial thickness intrasubstance tearing of the superior leading fibers; mild glenohumeral degenerative change and degenerative superior and posterior superior labral tear; partial-thickness split tear of the distal horizontal, proximal vertical segment of the biceps tendon; mild to moderate degenerative change of the left acromioclavicular joint, type II curved acromion; and mild subacromial and subdeltoid bursitis. Pet. Ex. 4 at 25.

On September 1, 2016, petitioner returned to Orthopedic Surgery, P.C., for a follow-up appointment regarding her left shoulder condition. Pet. Ex. 5 at 10. Petitioner stated that, for a few months after the flu shot, her arm had become paralyzed. *Id*. The orthopedist observed that petitioner had experienced left shoulder symptoms for over a year despite conservative treatment measures. *Id*. The orthopedist assessed petitioner with bursitis of the left shoulder and as having a "[c]omplete rotator cuff tear or rupture of left shoulder, not specified as traumatic." *Id*. at 10-11. The orthopedist ultimately concluded that surgical intervention was indicated and informed petitioner regarding the risks and benefits of rotator cuff surgery. *Id*. at 10.

On October 6, 2016, petitioner underwent a left shoulder arthroscopy, debridement, and anterior-inferior capsulolabral reconstruction with biceps tenotomy. *Id*. at 19. The procedure also included an open arthrotomy with a partial acromionectomy, acromioclavicular resection, and rotator cuff repair with bursectomy. *Id.*

On October 20, 2016, petitioner returned to Orthopedic Surgery, P.C., for a post-surgical follow-up visit. *Id*. at 24. The orthopedist noted that petitioner reported some numbness and tingling of the fingers; however, he indicated that these symptoms were possibly due to the positioning of petitioner's sling. *Id*. The orthopedist referred petitioner to physical therapy and ordered her to return in six weeks. *Id*.

At an initial physical therapy evaluation on November 1, 2016, petitioner reported that she had received a flu shot in her left shoulder in October 2015 and "had complaints of pain right away that got worse over time." Pet. Ex. 4 at 34. Petitioner recalled that she had been seen by her family physician twice regarding her shoulder

pain; however, she noted that the aforementioned physician "just ignored" her shoulder complaints. *Id*. Petitioner indicated that her current pain was localized to the left shoulder, left lateral upper arm, and posterior left shoulder. *Id*. at 35.

On December 8, 2016, petitioner returned to Orthopedic Surgery, P.C., for a follow-up appointment regarding her left shoulder condition. Pet. Ex. 5 at 32. At that time, petitioner reported continuing pain throughout her shoulder and the lateral aspect of her arm with limited motion and strength.[6] *Id*. Petitioner added that she had not experienced significant improvement of her condition with physical therapy. *Id*. On examination, petitioner presented with forward flexion of 40 degrees in both planes with pain as well as guarding and restriction. *Id*. The orthopedist administered an epidural steroid injection and observed subsequent improvement of petitioner's left shoulder pain and range of motion. *Id*. at 32-33. The orthopedist prescribed a Medrol Dosepak and recommended additional physical therapy to improve petitioner's strength and range of motion. *Id*. at 33.

On January 23, 2017, petitioner returned to Orthopedic Surgery, P.C., for a follow-up appointment. *Id*. at 34. At that time, the orthopedist noted that petitioner's condition had improved following the epidural steroid injection, prednisone, and physical therapy. *Id*. On examination, petitioner was observed to have "fair" strength with active forward flexion of 145 degrees and passive flexion of 155-160 degrees. *Id*. The orthopedist ordered petitioner to return for a follow-up appointment in four months. *Id*.

At her final physical therapy appointment on January 30, 2017, petitioner rated her recent pain as between a "3" to "8" out of "10." Pet. Ex. 7 at 32. Petitioner indicated that she continued to have difficulty with activities of daily living due to pain and lack of strength. *Id*. On examination, petitioner presented with tenderness to palpation, 3-/5 strength, 87 degrees of flexion, 62 degrees of abduction, 18 degrees of external rotation, and 41 degrees of internal rotation. *Id*. Overall, the therapist commented that petitioner had made "significant" improvement with physical therapy but nevertheless continued to experience "cycles of increased symptoms" in her left shoulder. *Id*. The therapist opined that continued physical therapy would provide further benefits; however, he noted that petitioner was unable to continue treatment due to a change of insurance. *Id*. Petitioner was discharged to a home exercise program. *Id*.

On May 11, 2017, petitioner returned to Orthopedic Surgery, P.C., for a follow-up appointment. Petitioner reported continuing soreness and other symptoms affecting her left shoulder, but noted that she was making progress with therapy and home exercises. Pet. Ex. 5 at 36. Petitioner's orthopedist ordered her to return in six months for a follow-up appointment. *Id*. at 37.

On November 10, 2017, petitioner returned to Orthopedic Surgery, P.C., for a follow-up appointment. *Id*. at 38. Petitioner reported that she continued to experience reduced range of motion and limited strength; however, she stated that her overall post-operative condition was "much better." *Id*. On examination, petitioner presented with 120 degrees of forward flexion and abduction and "reasonable" shoulder strength. *Id*.

---

[6] Petitioner stated that her current pain was different than her pre-operative pain. Pet. Ex. 5 at 32-33. Petitioner reported that her pre-operative pain "seems to be subsided." *Id*. at 32.

Her orthopedist ordered petitioner to follow up on an as-needed basis. *Id*. at 39. The record does not reflect any subsequent treatment for petitioner's left shoulder.

**b. Petitioner's Affidavit Evidence**

On January 8, 2018, petitioner filed an affidavit describing her October 31, 2015 vaccination and subsequent medical treatment. Pet. Ex. 1. Following her vaccination, petitioner recalled that she had "immediately" experienced an aching pain at the injection site. *Id*. at ¶5. Petitioner averred that she originally believed her symptoms represented normal post-vaccination pain; however, she noted that the pain progressively grew worse and spread throughout her left upper arm. *Id*. By January 2016, petitioner stated that she had constant pain in her upper arm in addition to limited range of motion, strength, and functioning. *Id*. Petitioner recounted that, although she complained of left shoulder symptoms at medical appointments on January 4, 2016 and April 12, 2016, her medical provider did not "appear to take [her] complaints seriously." *Id*. at ¶6. Specifically, petitioner noted that her medical provider did not perform a left shoulder physical examination, order testing, or prescribe additional treatment. *Id*.

Petitioner stated that her left shoulder condition received greater attention during an appointment with Debra A. Brown, N.P., on May 11, 2016. *Id*. at ¶8. The remainder of petitioner's affidavit provides a detailed summary of her course of medical treatment. *Id*. at ¶¶9-14. Petitioner averred that she continues to experience pain affecting her left arm with associated limitations on her activities of daily living. *Id*. at ¶15.

On March 20, 2019, petitioner filed an affidavit from George W. Larish, her husband. Pet. Ex. 11. In his affidavit, Mr. Larish recounted that petitioner complained of pain that was "more out of the ordinary than [he] would have expected" on the day of her October 31, 2015 flu vaccination. *Id*. at ¶2. The evening of the vaccination, Mr. Larish noted that petitioner had "severe pain where she received the injection." *Id*. Mr. Larish added that petitioner's pain subsequently worsened and led to weakness in her left arm, difficulty sleeping, and limited range of motion. *Id*. at ¶3. Mr. Larish recalled that, at an appointment in the "Spring of 2016," petitioner's physician did not take her left shoulder complaints seriously, which prompted her to seek another medical provider. *Id*. at ¶5. Regarding petitioner's current condition, Mr. Larish confirmed that her pain has improved, but she continues to have limited range of motion. *Id*. at ¶7.

On April 4, 2019, petitioner filed a supplemental affidavit providing additional details regarding her October 31, 2015 vaccination and subsequent medical treatment Pet. Ex. 12. Petitioner reiterated that she had experienced shoulder pain "from the moment" of the injection that persisted. *Id*. at ¶6. Petitioner averred that the medical provider from whom she initially received treatment "did not seem concerned by [her] left shoulder pain, so [she] assumed it would go away." *Id*. at ¶8. However, petitioner indicated that her pain progressively grew worse, which caused her to quit her job as a cashier. *Id*. at ¶¶9-10. Petitioner confirmed that her left shoulder symptoms have improved over time; however, she continues to have pain and limited range of motion. *Id*. at ¶11.

## III. Parties' Contentions

In her Motion for a Ruling on the Record ("Pet. Motion"), petitioner contends that the record in this case establishes all of the criteria of a Table injury for SIRVA.[7] Pet. Motion at 8. With regard to onset, petitioner argues that her medical records substantiate her claim that she experienced onset of her shoulder pain within 48 hours of vaccination. *Id*. at 9. She cites several medical records in which she linked her shoulder symptoms to her flu vaccination or otherwise reported that her shoulder pain began immediately following vaccination. *Id*. at 11-15. Petitioner asserts that these medical records are consistent with the affidavits filed to date regarding the onset of her injury. *Id*.

Petitioner acknowledges that she did not receive medical treatment for her alleged shoulder injury until January 4, 2016—approximately nine weeks following her vaccination. *Id*. at 9, 11. However, petitioner argues that her affidavits provide a credible explanation for her delay in seeking treatment. *Id*. at 9-11. She further contends that there are several special master decisions "finding onset within 48 hours based on lay testimony supported by medical records" even where there was a significant delay in seeking medical treatment. *Id*. at 14.

In his Response to Petitioner's Motion for a Ruling on the Record ("Res. Response"), respondent contends that petitioner has not established onset of her left shoulder pain within 48 hours of vaccination. Res. Response at 10. Referencing petitioner's motion, respondent notes that petitioner "largely relies" on her affidavits in support of her allegations regarding onset. *Id*. However, respondent asserts that petitioner's affidavits are inconsistent with her medical records regarding the characterization of her symptoms.[8] *Id*. at 10-12.

Additionally, respondent maintains that the affidavits of petitioner and her husband are inconsistent with one another regarding the characterization of petitioner's symptoms.[9] *Id*. at 13-14. At the same time, respondent observes that neither petitioner nor her husband "explain how they are able to now vividly recollect petitioner's alleged left shoulder pain that reportedly occurred years earlier, a subject that would typically be explored on cross-examination." *Id*. at 12.

Finally, respondent argues that the current factual record is insufficient to render a finding regarding onset in petitioner's favor because she has not testified subject to

[7] Petitioner filed a motion for a fact ruling on the issue of onset and additionally requested a ruling on entitlement to compensation in this case. *See* Pet. Motion at 1-2. The undersigned notes that, at the March 11, 2019 status conference, the parties agreed to have the issue of onset decided on the record. *See* Scheduling Order, filed March 11, 2019 (ECF No. 34). Accordingly, the undersigned has limited the scope of this ruling to cover only the issue of onset in this case.

[8] Additionally, respondent maintains that petitioner's affidavits are uncorroborated by contemporaneous objective findings and employment records. Res. Response at 11-12.

[9] Referencing petitioner's April 1, 2019 affidavit, respondent also notes that this document contains "additional vivid details" regarding her vaccination that were not included in her prior affidavit filed on January 8, 2018. Res. Response at 12-13. According to respondent, these circumstances undermine petitioner's factual allegations as to the onset of her alleged injury. *Id*.

cross-examination. *Id*. at 14. Respondent notes that petitioner's medical records indicate she was aware of a SIRVA prior to her filing of a petition for compensation. *Id*. Because there was no hearing, respondent asserts that there has been inadequate development of relevant issues, including "if, and at what point, petitioner was seeking medical care in accordance with a possible 'SIRVA' injury." *Id*.

In her reply brief ("Pet. Reply"), petitioner notes that her affidavits provide an explanation for any discrepancies in her medical records regarding the characterization of her symptoms. Pet. Reply at 3-4. Petitioner argues that, even if the court were to ignore her affidavits, the remaining medical records in this case establish onset of shoulder pain within 48 hours of vaccination. *Id*. at 4-5.

Nonetheless, petitioner disputes respondent's contention that her affidavits (or the affidavit of her husband) are inconsistent with one another or the medical records filed in this case. *Id*. at 6-9. Addressing respondent's reference to the time elapsed between the affidavits and the events described therein, petitioner explains that her injury was severe, and therefore memorable, even years later. *Id*. at 7-8.

Finally, petitioner notes that respondent's counsel explicitly did not object when asked during the March 11, 2019 status conference whether respondent would be amenable to having the issue of onset decided on the record. *Id*. at 9. As a result, petitioner asserts that respondent waived his right to a fact hearing and cross-examination regarding petitioner's knowledge of SIRVA and other issues raised in respondent's brief. *Id*. at 9-10.

## IV. Finding of Fact

A petitioner must prove, by a preponderance of the evidence, the factual circumstances surrounding her claim. 42 U.S.C. § 300aa–13(a)(1)(A). Effective for petitions filed beginning on March 21, 2017, SIRVA is an injury listed on the Vaccine Injury Table ("Table"). *See* Vaccine Injury Table: Qualifications and Aids to interpretation. 42 C.F.R. § 100.3(c)(10). The criteria are as follows:

> A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following: (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

*Id.; see also* National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, 80 Fed. Reg. 45132, Notice of Proposed Rulemaking, July 29, 2015 (citing Atanasoff S, Ryan T, Lightfoot R, and Johann-Liang R, 2010, *Shoulder injury related to vaccine administration (SIRVA)*, Vaccine 28(51):8049-8052).

Section 42 U.S.C.A. § 300aa-13(b)(2) provides that "[t]he special master or court may find the first symptom or manifestation of onset or significant aggravation of an injury, disability, illness, condition, or death described in a petition occurred within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period. Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset or significant aggravation of the injury, disability, illness, condition, or death described in the petition did in fact occur within the time period described in the Vaccine Injury Table."

The issue in this case is whether the onset of petitioner's left shoulder pain occurred within the specified timeframe of 48 hours or less after administration of the October 31, 2015 flu vaccination. For the reasons described below, the undersigned finds that there is preponderant evidence that the onset of petitioner's left shoulder pain occurred within 48 hours of the October 31, 2015 flu vaccination.

As indicated above, petitioner's medical records demonstrate that petitioner repeatedly and consistently linked her injury to her flu vaccination. Indeed, at her first post-vaccination medical appointment on January 4, 2016, petitioner reported that she had previously been administered a flu shot in her left arm and was experiencing discomfort.[10] Pet. Ex. 3 at 218. At her next medical appointment on April 12, 2016, petitioner again reported discomfort at the site of her flu vaccination. *Id*. at 65.

Significantly, at a medical appointment on June 22, 2016, petitioner indicated that her pain began on the day of her flu vaccination—the first of multiple statements dating the onset of her injury as occurring during the period immediately following her vaccination. Indeed, on that date, petitioner reported that she had been administered a flu shot in October 2015 and had experienced pain and discomfort for a few weeks that had persisted. Pet. Ex. 5 at 5. Contemporaneously, petitioner completed a "Medical History Questionnaire" noting that her left arm injury had occurred in October 2015—*i.e.*, as of the date of her vaccination, since the vaccine was administered on October 31, 2015. *Id*. at 2. Petitioner's subsequent medical records provide further

[10] In her affidavit filed on April 4, 2019, petitioner noted that she was receiving primary care treatment "every three or four months" during the period after her October 31, 2015 vaccination to monitor her glucose levels. Pet. Ex. 12 at ¶8. Following her vaccination, petitioner stated that she was aware that she had a follow-up appointment on January 4, 2016 for glucose monitoring and to review a previous abdominal ultrasound. *Id*. Petitioner explained that "it was [her] plan to tell [her] doctor about [her] left shoulder pain at that appointment, which [she] did." *Id*. Prior to her October 31, 2015 vaccination, petitioner averred that she had experienced only temporary pain following flu vaccinations. *Id*. at ¶3. After the October 31, 2015 vaccination, petitioner noted that her husband had advised her that her shoulder symptoms would "go away in a few days." *Id*. at ¶5. Petitioner stated that she "had no idea that a flu shot could cause that type of unremitting pain, so [she] kept waiting and hoping for it to get better, which it never did." *Id*. at ¶6. The undersigned finds that petitioner's affidavit provides a credible explanation for the approximately nine-week delay in seeking treatment that is consistent with other SIRVA cases. *See, e.g.*, *Williams v. HHS*, 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment because petitioner underestimated the severity of her shoulder injury); *Marino v. HHS*, 16-622V, 2018 WL 2224736, at *2 (Fed. Cl. Spec. Mstr. Mar. 26, 2018) (noting a delay in seeking treatment due to a busy work schedule and difficulty making appointments); *Knauss v. HHS*, 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (noting a three-month delay in seeking treatment without a specified reason).

corroboration. For example, at an initial physical therapy evaluation on November 1, 2016, petitioner reported that she had received a flu shot in her left shoulder in October 2015 and had complained of pain "right away" that worsened over time.[11] Pet. Ex. 4 at 34.

The undersigned finds the affidavits filed in this case to be consistent with the above medical records regarding the onset of petitioner's injury. Indeed, petitioner averred in her June 8, 2018 affidavit that she "immediately" experienced an aching pain following her vaccination that progressively grew worse. Pet. Ex. 1 at ¶5. In her April 4, 2019 affidavit, petitioner reiterated that she had experienced shoulder pain "from the moment" of the injection that persisted. Pet. Ex. 12 at ¶6. In his affidavit, petitioner's husband recounted that petitioner complained of severe pain that was "more out of the ordinary than [he] would have expected" on the day of the flu vaccination. Pet. Ex. 11 at ¶2. He added that petitioner's pain subsequently worsened and led to weakness in her left arm, difficulty sleeping, and limited range of motion. *Id*. at ¶3. Considered together, the undersigned is persuaded that petitioner's affidavits are in harmony with the contemporaneous medical records and provide additional credible details regarding the onset of petitioner's injury.

As described above, respondent asserts that the affidavits submitted by petitioner and her husband are inconsistent with the medical records regarding the characterization of petitioner's symptoms. Res. Response at 11-12. Specifically, respondent notes that petitioner's affidavits:

> [C]haracterize petitioner as experiencing *severe* left shoulder pain in the time period after her administered flu vaccination of October 31, 2015. Whereas, her actual medical records (nine weeks after vaccination), reflect her complaints of left shoulder "discomfort," complaints that did not even prompt a thorough physical examination of her shoulder until June 22, 2016. [Pet.] Ex. 5 at 5. Likewise, limited range of motion (a requirement for a SIRVA under the QAI) was not documented until the June 22, 2016 exam. *Id*.

Res. Response at 11.

Respondent later argues that the affidavits of petitioner and her husband are inconsistent with one another regarding the characterization of petitioner's symptoms. *Id*. at 13-14. Respondent observes that petitioner's husband described her pain as "severe" on the day of the vaccination, whereas petitioner averred that she experienced "aching" pain in her left shoulder that "hurt more than normal." *Id*. at 13.

The undersigned does not find respondent's arguments to be persuasive. Initially, the characterizations of petitioner's symptoms (e.g., "discomfort" vs. "severe" pain vs. "aching" pain) cited by respondent are not necessarily inconsistent with one another. In any event, petitioner noted in her affidavits that the medical provider from whom she initially sought treatment did not take her complaints seriously—a

[11] Petitioner also completed a medical questionnaire on November 1, 2016 in conjunction with her physical therapy intake. Pet. Ex. 7 at 14. Under "Chief complaint/ailment/injury," petitioner wrote "rotator cuff" with a "date of injury" of October 2015. *Id*. Petitioner listed "flu shot" as the cause of her symptoms. *Id*.

circumstance that would explain any diminishment of her recorded complaints or lack of physical examination findings. Exs. 1 at ¶6; 12 at ¶8. Ultimately, the undersigned finds that these matters have little to no bearing on the issue of onset in this case.

In his brief, respondent notes that petitioner's April 1, 2019 affidavit contains additional details regarding her vaccination and the period following her vaccination that were not included in petitioner's December 20, 2017 affidavit. Res. Response at 12-13. According to respondent, these additional details should undermine any reliance on petitioner's factual allegations as to the onset of her injury. *Id*. at 12. The undersigned disagrees. Indeed, prior to filing the April 1, 2019 affidavit, petitioner was specifically ordered to file a brief and "*any additional evidence*" regarding the onset of her SIRVA. *See* Scheduling Order, filed March 11, 2019 (ECF No. 34) (emphasis added). Moreover, respondent has not identified any inconsistencies between the two affidavits that would call into question the veracity of petitioner's allegations. The undersigned finds that the two affidavits are in harmony with petitioner's contemporaneous medical records and provide additional credible details regarding the onset of her injury.

Finally, as described above, respondent raises issues in his brief regarding the lack of cross-examination in this case. Referencing the affidavits filed by petitioner, respondent states that:

> Neither petitioner nor her husband's written statements offer sufficient foundation to explain how they are able to now vividly recollect petitioner's alleged left shoulder pain that reportedly occurred years earlier, a subject that would typically be explored on cross-examination.

Res. Response at 12.

Later, respondent notes that petitioner completed a patient questionnaire on August 10, 2016 in which she reported that she suffered a "Sirva inj[ury]."[12] *Id*. at 14. Respondent explains that this record indicates petitioner was aware of a SIRVA injury prior to the filing of her petition and "may have been aware that she could file a petition for monetary damages." *Id*. Respondent contends that the record is unclear as to whether "petitioner was seeking medical care in accordance with a possible 'SIRVA' injury." *Id*. Respondent argues that, because petitioner has not testified subject to cross-examination, the current factual record is insufficient to render a finding regarding onset in her favor. *Id*.

The undersigned does not find respondent's arguments to be persuasive. With regard to the affidavit evidence filed in this case, the undersigned reiterates that respondent has not identified any material inconsistencies that would call into question the veracity of petitioner's allegations. Ultimately, a determination regarding a witness' credibility is needed when determining the weight that such testimony should be afforded. *See Andreu v. HHS.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. HHS*,

---

[12] In his response, respondent indicates that the patient questionnaire form was completed on August 8, 2016. Res. Response at 3, 14. However, the patient questionnaire form is dated August 10, 2016. Pet. Ex. 6 at 4.

991 F.2d 1570, 1575 (Fed. Cir. 1993). As indicated above, the undersigned finds that petitioner's affidavits provide credible information regarding the onset of her injury.

Turning to respondent's argument regarding petitioner's awareness of SIRVA, the undersigned observes that respondent has not identified any specific evidence—other than petitioner's response to an August 10, 2016 patient questionnaire—that would call into question the veracity of petitioner's course of treatment or motive in filing a petition for compensation. Res. Response at 14. Significantly, the undersigned notes that, at the status conference held on March 11, 2019, respondent's counsel was specifically asked whether respondent would be amenable to having the issue of onset decided on the record. *See* Scheduling Order, filed March 11, 2019 (ECF No. 34). At the time of the status conference, much of the evidence now cited by respondent as requiring cross-examination (including the August 10, 2016 patient questionnaire) had already been entered into the record. *Id*. Nevertheless, respondent's counsel confirmed that respondent would have no objection to having the issue of onset decided on the record. *Id*. Based on all of the information above, the undersigned finds that the issue of onset may appropriately be decided on the existing record in this case.

## V. Conclusion

The undersigned finds, based on the record as a whole, that the onset of petitioner's left shoulder pain occurred within forty-eight (48) hours of her October 31, 2015 influenza vaccination.

**The parties are encouraged to consider an informal resolution of this claim. Petitioner shall file a joint status report by no later than Friday, August 2, 2019, updating the court on the status of the parties' settlement discussions.**

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master